is to be submitted today on oral argument and we begin with United States v. Ocampo-Vergara. I'm sorry I did mispronounce that. My apologies. I didn't read carefully enough. That's all right. That's very common. I represent Ricardo Ortiz-Fernandez, who's also referred to in the record as Alex, and we had just raised an issue regarding the admission of two summary charts. Those were Government's Exhibit 160, which had... Okay, where are those in the record? It should have been sent up with the electronic... We don't have them. They don't? I don't have them. I can check with the clerk's office, the district clerk's office. I know we... I have copies of them, but the one is... 160 is a chart with their faces and phone numbers on it and... Do you have extra copies? I don't. I just have these two, but I can provide them. I think that with the permission of the presiding judge, it would be helpful to me to have them, but... Well, it should have been sent up as part of the official record on appeal, so I don't know why. But they are part of the official record on appeal? Yes, they are part of the official record. But anyways, the one chart has... The 160 is... You see it has their pictures on it, and then it has phone numbers underneath there and dates and times of calls, I think, and this other one just has the names of the people across and down the side, and then it has dots where they supposedly had communications by phone. If Judge Smith were inclined, I would actually like to see them. You're holding them up. I'm sorry, would you like me to bring them up and show them to you? Yeah, sure, that's fine. If Judge Smith consents, you can hand them to the law clerk. I'm sorry they didn't send them up. Mostly what I have to say is pretty well in the briefs. I want to just add a couple of comments. The government talks about the fact that we didn't support a conclusory statement. Can I just ask you on Exhibit 160, is this intended to portray the government's version of the conspiracy? Yes. Kind of how the company, if you will, the drug-running company, as the government sees it, ran. That's my understanding. Like an org chart? I was not the trial attorney in this case. I was just appointed for appeal, but from the record, that's my understanding of what that was supposed to do. So anyways, let me take it back. I just have a couple, three points I want to just say. There was an argument in the government's brief that we made some conclusory statements. I disagree with that in the reply brief, but I would like to add that it's really sort of hard to prove a negative if you're saying, you know, something's not in the record. The connecting the phone numbers to the phone to the person is not in the record. The only way I can prove that is say you have to look at the whole record. I can't point to a particular page in the record and say it's not on that page because if it's anywhere in the record, obviously that's fine. I looked. I didn't find it anywhere. If the government has pages that it can cite to specifically, I haven't seen it. And so, you know, it's always the government's burden to show the admissibility of its evidence. So I would say that really is not an issue. The other thing I would like to talk to you is about the government's Exhibit 162, and that's the one that you have there with the dots on it. We're going to give, we'll give you an extra minute because you were interrupted by the I appreciate that. Thank you. The one with the dots on it, the government's response to our objection on that was that to say that each person, the conversation between each of those people was discussed in other testimony. And then they cite to places in the record where they say that that occurs. The problem with that is there's just six out of the 10 people that my client supposedly have talked to, did they cite to in the record where that was discussed. There's obviously four more, those Gustavo Ortiz-Alazar, Daniel Castro-John, Noemi Vargas, and Diana Campos-Uribe. Those four, there was no citation in the government's brief to where in the record there was any evidence that those people had those conversations. Also, they didn't cite to anywhere. Obviously that chart has more than 70 dots on it. And so if you figure that's the way the chart's set up, that's at least 35 phone calls. They didn't cite to the rest of it. So the objection at trial was that even if there's some of it in there, not all of it is in there. That's the exact objection that was raised by the trial attorney. Our record page number for that is in the 41286 record is page 2427. And so it's not all there. It's not all in the testimony. And so even the government concedes that those charts have to accurately reflect what the testimony says, and they don't. They go beyond it. The last thing I want to address is the harmless error analysis. The government says it's harmless because the jury, the evidence was introduced during the testimony or the case in chief of one of the co-defendants. I submit to you that the jury would not have made any kind of such distinction, that it was only applicable to one. Also, the evidence was used against my client. I mean, obviously, his name is on those charts and the dots are there and the links are there between the defendants. And so as far as that's concerned, I don't think it makes it harmless. The second point is that I think more important is that they said it's harmless because of the overwhelming evidence. And there's a couple cases out there that are interesting, but the strength of the evidence against you... I'll give you 30 seconds to say whatever you want to, because you don't have any rebuttal time. I'm sorry? You don't have any rebuttal time, so go ahead and say what you need to say in 30 seconds. Okay. I'm sorry, Your Honor. I cited one case, Regan v. Time, Inc. It's a Supreme Court case. It talks about a picture being worth a thousand words. And to paraphrase the footnote that was in that case, related to that, symbolism is a primitive but effective way of communicating ideas. The charts in this case symbolize a conspiracy and is a shortcut form of mind-to-mind. And when you do that, those charts are so important to the jury that they basically go into the jury room with them and overwhelm the rest of the evidence. So I appreciate that reversal. Thank you very much for the extra time. Thank you, Mr. Schmucker. All right. I'll let you pronounce your name, because I'm going to mess it up. I've already messed up Mr. Schmucker's name, so... It's Joe Padian. Padian? All right. And I am here on behalf of Cohen Salvador Acampo Vergara. The issue we have raised is a sufficiency of the evidence issue. Our contention is that the jury faced a decision which was not rational on stacking of inferences and guilt by association. Now, as I understand it, you did not move for acquittal at the end of the evidence, so we just looked to see whether there was any evidence. Is that right? Yes, Your Honor. There was a motion for acquittal that was joined by the appellant's trial counsel. And as such, we would, because it's a de novo proceeding, we would ask that we would like to proceed, that the court review the evidence under the Rule 29 motion for acquittal, which I believe was joined by appellant's, excuse me, appellant's trial counsel joined in another counsel in making that motion. All right. We'll just go ahead and discuss the evidence, and we'll decide about this. The government presented 11 witnesses to prove this case. Four witnesses had never met or come into contact with the appellant, Salvador Acampo Vergara. Those witnesses, Jose Figueroa, never saw the appellant, never met the appellant. Alejandro Gonzalez, who was constantly going back and forth from the United States to Mexico in order to conduct the drug trafficking, never met or saw the appellant in this case. Santiago Lagunas, also involved in this case, also conducting the trafficking of the drugs, never met or saw, didn't know the appellant in this case, Salvador Acampo Vergara, nor did Luis Palacios, who the government also presented. So the first four witnesses mentioned to this court did not know or had never met or seen Salvador Acampo Vergara. There were four witnesses who presented direct evidence that there was a participation in the conspiracy by Salvador Acampo Vergara. However, Your Honor, the testimony of those witnesses was so diminished by the cross-examination and presentation of previous misstatements to the court, misstatements to agents, the fact that each of them was gaining such an advantage by testifying in the case against Salvador Acampo Vergara. The fact that the inferences made when each of those statements that those witnesses made connected Salvador Acampo Vergara to the crime, they were made solely for the purpose of reducing their own sentences. There were two witnesses that the government presented who did know Salvador Acampo Vergara, but those witnesses could not connect Salvador Acampo Vergara, and that was Daniel Castrejon and Marcel Valdez. Neither of those witnesses could connect Salvador Acampo Vergara to the conspiracy through any direct evidence. Even the agent, Agent Cloud, stated that Salvador Acampo Vergara was never caught with contraband. There was no border crossings or any records of border crossings for Salvador Acampo Vergara. There was no direct communication ever recorded, even though they had wiretaps and phone records for every other co-defendant. There was no record of Salvador Acampo Vergara making any statements to any of those other co-defendants or the witnesses that the government brought participating in the conspiracy. The government has the burden to present to the jury a case which will allow the jury to make a rational decision based on that evidence. The decision the jury made in this case that Salvador Acampo Vergara was guilty of conspiracy, that is that he had an agreement, he had knowledge of the agreement, and he participated in that agreement. Isn't there testimony that Gonzales, Adriana, Angelica, and Valdez testified that Acampo Vergara recruited them to be couriers and that he expressly informed them that they would be transporting drugs? Isn't that in the record? And didn't they testify to that? They did, Your Honor. They did testify to that. So how can you say there's no testimony in the record that he was involved with? Your Honor, I submit that there's no credible testimony in the record, and I know that the court defers to the jury to make determinations of credibility. However, that determination that that jury made has to be rational, and I submit to the court that that was not a rational determination based on the record. And I believe my time is up. Yes, thank you, Mr. Kagan. Thank you. Mr. Smyth. May it please the court, good morning. My name is Peter Smyth. I represent Gustavo Ortiz Salazar. And on appeal, we brought up two issues, the first one being that the trial court aired in admitting the opinion testimony of Richard Clough when he said that my client was a drug courier. The second one being the admission of guilt by association evidence that the government presented in the trial court was plain error. Going back to the first issue, the government asked Richard Clough, point blank, based upon your investigation and the travel patterns of Ortiz Salazar, what did you determine? And he answered, we, speaking for the agency that he was working for, we determined that he was believed to be a courier. Okay, but at the beginning of his testimony, he was proffered as an expert, and the court said any objection, and everybody said no objection. What was he an expert on? As I understand it, he was an expert on drug organizations. Okay, and isn't that the context in which he used the term courier? It wasn't, you know, in law school, I remember these cases about the drug courier profile, where they would stop you at the airport because you were wearing a funny hat or something like that, and that was the drug courier profile, or you were on a one-way ticket. That's not the context in which this was said. He's kind of doing the org chart we talked about earlier, and where does your client fit in that? Isn't that the context which would be consistent with what he was proffered for as an expert and that nobody objected to? Well, I don't think so, Your Honor, because as an expert, he can testify as to the unique business model of drug trafficking organizations, a business model, but I don't believe he can cross the line and start naming names and naming people as he's this in this particular organization, she is this in this particular organization. He's not profiling him to get there. He's kind of saying the role he played. He was a driver, which would make him a courier in this organization that I'm an agent CLO and an expert on. This is how these organizations work. There's the top dog, there's the middle guy, there's whatever, and they have all their names, and this is where he fell in that. I mean, I agree it would have been better not to approach it that way, but is it really the same thing as the drug courier profile of, well, if a guy buys a one-way ticket and wears a funny hat and has a mustache, then he's a drug courier? Well, I think his testimony is based upon drug profiling. I mean, the question itself is based upon your investigation. Well, what does that investigation entail? It entails some drug profiling. I mean, here, Richard CLO is the very first witness in the case, so he is almost like a super witness. He is testifying as to his personal observations. He's testifying as a summary witness of the entire investigation, and he's also testifying as an expert. And here, it's all summed up by the government based upon your investigation. That's not only what you have seen, but it's also what your agents have seen. But experts can do that. They can rely on evidence that they didn't personally experience, and so if there is evidence that your client was, in fact, a driver of drugs, that's what a courier is, isn't it? It's not saying, well, he's got a mustache, so he must be, or he's standing there in a funny way, or he's in the corner, all those things that were in those drug courier profile cases. This just doesn't hit me the same way. I'm not saying you don't ultimately prevail on your point. I'm just saying it seems different. Well, when you go back to the question, based upon your investigation, this is the government's question, based upon your investigation, what is that investigation if it doesn't include drug profiling? I mean, there is no in-court testimony that he's relying on. He is testifying as a summary witness, and he's using that summary information he has, the opinions of other agents and whatever they gathered, and said point blank, my client is a drug courier. He puts them right into the conspiracy, and I believe under this court's precedent, he can't do that. He can't say that we believe that this person is a member of a drug trafficking organization. The expert can describe drug trafficking organizations and how they work, but I don't believe that this court has said that a federal agent can sit down and say, sit on the stand and say, well, based upon our investigation, which may or may not include profiling and other out-of-court statements and drug profiling, he is a drug courier. When he says that he is a drug courier, he puts them square into a drug trafficking organization. So as you said at the beginning, your objection is only to the fact that he named names, not that he described information that would be parallel to the facts and evidence that the jury could identify with your client. Yes, Your Honor. At the very beginning of his testimony, he said that he believed that was proper under the rules, but then the government delved into this specific organization where you have this agent calling people sell-heads, distributors, couriers, and it's all based upon this opinion testimony. I believe that's all the time I have. Yes, thank you, Mr. Smythian. You've saved time for rebuttal. Yes. Ms. Hagan. Good morning, Your Honors. Kerry Hagan for the United States. Let's begin with this last point about the drug courier profile. While it's on everyone's mind, it does seem to me that it may have extended past what our case law requires when it's sort of an ultimate jury question to identify the specific defendant as a courier. Okay. Judge Smyth, I think when you review the record, especially Agent Clow's testimony, in particular, what you're going to find is that Agent Clow described what a drug courier had traveled patterns and that drug trafficking organizations frequently used different drug couriers, but he never offered an opinion about what was in a defendant Ortiz Salazar's mind. But he did, in fact, though, say that he, in his opinion, he was a drug courier. Is that right? What he said, no, that's not right. What he said was, in his opinion, Ortiz Salazar could possibly be a drug courier based on what he saw. See, the difference is, in Gonzaga's rhetoric, which is a case I'm assigned extensively in our degree, it basically says that when an defendant's contact matches the profile of a drug courier, thus, the defendant must have known he was carrying drugs. That's information, but that's not what happened here. So the line is crossed not when he calls him a courier, but when he then makes the conclusion that he knew he was a courier? Yes. Because the actual question was now, based on your answer, we determined that he was believed to be a courier for the drug trafficking organization that we were targeting. So that's the language we're dealing with. Right. And so what his point was, and I think what, in context, his point was, because we believed him to possibly be a drug courier, and that was based on his travel to O'Hare Airport with Araceli Gonzalez, we needed to investigate further. And how did they do that? They put the TCS look out on him. So that was the purpose. So you're saying he could have been an unwitting sort of victim of Araceli, you know, he's going and she says, hey, could you carry my bag, my suitcase for me? The suitcase is full of drugs, but he don't have any idea. He's just being a gentleman and all that. And you're saying, just saying he's a courier and that he physically transports stuff doesn't make him intentionally such. That seems like a very fine distinction in a jury when he's been calling people cell heads and couriers and whatever for several pages. It is a fine distinction, but calling the witnesses couriers who testified that they were couriers doesn't really add anything to it. What's weird to me is that the lawyers were all over any time he tried to get into hearsay and whatever. There was plenty of objecting. It wasn't like the lawyers were asleep, but they didn't object to any of this mention of courier or cell heads or whatever, and obviously plays into the but tell us how that transpires here. Well, in our case, they did object once to somebody else, but not to most of it. Right, and you'll have to remember that when Ortiz Salazar was separated from Gonzalez at O'Hare Airport, he said he wasn't even traveling with her. He didn't even know her. So, as the prosecutor explained in a closing argument, that is consciousness of guilt evidence. In our case, Ortiz Salazar was found guilty because the evidence showed his knowing involuntary participation in the drug trafficking conspiracy. Um, the agent's testimony did not cross what this court has said is a fine but critical line between expert testimony regarding methods of operation unique to the drug business and testimony about the defendant's intent. Excuse me. Yes, sure. Take your time. That's all right. Thank you. Okay. And the case that I started in the 28 J letter that I filed Monday. In that case, the agent listed several things about drug courier profile. This is what they was testimony about how drug couriers and the timing, how they went from Mexico to the United States and then back to Mexico. And the court found that the agent's testimony was merely an explanation of the facts. In that case, the agent there, like in our case, special agent clown, made no assertion or generalization regarding the defendant's intent. And therefore, it wasn't even the functional equivalent of an opinion that the defendant knew he was carrying drugs. So I think the agent was very careful when he testified that he and that he did not cross the line that the court has said exists. It was maybe we should move to some of the other points. I got you started off on that. And they responded to the question. Go to the argument about the summary charts. And for the court's convenience, I have some additional copies. And I know one of those charts is really hard to read because it's so small. So may I tender these to the bench so I can see them better? Yeah, you can give those to them. Thank you. The parties agree that the proper standard for evaluating whether the district court erred in admitting those two charges is abuse of discretion. This court has said that a trial court abuses its discretion when admitting evidence based on an erroneous view of the law or a clearly erroneous assessment of the evidence. The crux of the argument by opposing counsel, if I could lift from her brief, is that the charts stand anonymous phone records with a name. And that was something that the court did find in Zappa. But we don't have that here. And the reason that we don't have it and the reason that there is no error in this case is because Agent Clow testified that the charts were supported by evidence that was already before the jury. Specifically, those exhibits were 143 to 159. So I want to look at what those exhibits would have been. Rather than going to the exhibits themselves, if you want to look at the exhibit list, what you will find is that now those will show the phone number. It won't show the subscriber name. That's because we're dealing with drug dealers. They don't put phones in their names usually. If you look though at Government's 150 through 158, those are a huge amount of records. That's why they qualify under 1006 as voluminous records. Those are the phone downloads from every phone that was collected from those funds had a phone contact list. And so in those phone contact lists, the numbers were attributed to different people. So that's how the evidence did support attributing phone numbers to the people in question. On top of that, you need to think back to what Agent Clow testified in the very beginning of the trial, which was after Palacios was arrested in San Antonio, the DEA put every phone number that was in Palacios' phone directory into a database and checked it against phone numbers being investigated by DEA all over the country. When they did that, they found one phone number hid in Chicago. That's what brought Ortiz-Fernandez into this investigation because according to Agent Clow's testimony, they then contacted the DEA in Chicago. Chicago sent a photograph of the person using that phone number and the phone number and that was Ortiz-Fernandez. And if you look back at the exhibit list again, that's Government Exhibit 149. That's the pin register information from Ortiz-Fernandez's funds. So I think what you will find is that Agent Clow was right. All of the evidence supporting the entries on those charts were contained in those records. But it is appellant's burden to show that there was error. And the appellant has not done that. What the appellant has done, and the reason I called her argument conclusory, is because appellant merely relies on Mr. Effington's assertion in cross-examination and in arguing to keep the charts out, that those records or how do you put it, that the phone records were not attributable, the toll records were not attributable to any particular person. That's just an assertion with no proof behind it. There, this voluminous evidence is what supported it. And in addition to that, as further cooperation, that the charts were accurate, you had Angelica and I forget, Angelica Velasco Campos, who testified that her phone had the phone numbers for all three defendants. She also had phone numbers for witnesses Castro-John, for another co-conspirator, Diana Campos, who did not testify, for Adriana and for Chula. Her phone download is Government Exhibit 154. So that's in evidence. Araceli Gonzalez testified that she called Ocampo Vergara when she crossed the border to tell him that she had made it, and her records, the phone dumps from her phone, are Government Exhibit 150 and 151. Another example would be Adriana Diaz Ocampo, who testified that she had phone numbers for and I believe, I believe that she said she also had Ortiz Fernandez, and her phone records were downloaded in Government Exhibit 153. And yet another example is Marisol Fontes, who had Ocampo Vergara's phone number. She said she called him when she crossed the border, so that phone number would have been in her phone dump, and that's Government Exhibit 152. So I submit to you, Your Honor, that there is no error in this case. The District Court... Would you address the question that was asked earlier about whether there was a sufficient motion for acquittal, for judgment of acquittal, to close the evidence by all of the defendants? I think I recall that two of the three appellants made Rule 29 motions. Particularly the question refers to Mr. Ocampo Vergara. Yes, sir. If you don't, if you don't know, let's not spend any time on it. Talk to us about guilt by association evidence. The trial court here did not err by allowing guilt by association, because the government was not arguing that any defendant, and in particular Mr. Ortiz Salazar, was guilty because of the people that they associated with. The District Court can protect defendants from guilt by association, but does not need to protect co-conspirators from evidence of their Confederate actions, that they take in furtherance of their common, charitable aims. I mean, your point, as I understand it, is that a conspiracy is by definition association with other wrongdoers. Is that... That's correct, Your Honor. That's correct. But not mere association. I mean, if I happen to drive in a car with someone who is a member of the conspiracy, that doesn't automatically make me a member of the conspiracy. Exactly, Judge James. And if you look to Alejandro Rodriguez's testimony, yes, Ocampo, excuse me, Ortiz Salazar, rode in the car and drove in the car with Alejandro when he knew that they were carrying drugs, but... That's the critical piece. Right. And Rodriguez testified that he told him, I'm carrying drugs. And Ortiz said, that doesn't matter, and I'm tired of making little money. Introduced me to some of the people he worked with. And then when they got to Chicago with the drugs, Rodriguez paid Ortiz $2,000 for driving the car that had drugs in it for a couple hours. So there really is not a question of that type of evidence being introduced for mere presence or mere guilt by association.  Okay. Your Honor, we rely on the rest of our brief, and I would just like to point out that in this eight-day trial... No, your time has expired, Ms. Hagan. Thank you. Mr. Schmeich, you've saved time for rebuttal. Thank you. There are just a couple things I'd like to address. One, regarding Agent Clough, I mispronounced his name, it's Clough. The government says that he gave his opinion, quote, based on what he saw. I don't believe that's what his quote is. His quote is, we determined he was believed to be a courier, meaning the DEA, the whole agency, that's what his... So how do you explain, I mean, there's plenty of objecting that the lawyers are engaged and involved and they're not, you know, asleep. If this is so awful, why wasn't it objected to? It was objected to late, in a way, because the same question was asked about some other... Some other one. But by that time, we'd had the statement you're concerned about, as well as all the cell heads and couriers and whatever that you're complaining about. So I... Yes. I don't think that preserved the air, let's put it that way, and I don't think that changes your standard of review on the particulars. Right. But to answer your question, Judge Haynes, I think, like I said, this Agent Clough becomes somewhat of a super witness, where he can testify as to his personal observations, summary of... And also expert opinions. So it makes it very hard for the trial lawyers to figure out what is objectionable and what is not. For instance, in this... Yeah, but you're saying the mere use of the word courier is enough, because if you need more than that, you don't have it. If... Yes. What you have is the phrase, you know, the back and forth that we've read and talked about, and you say that's enough, without more. And therefore, that should be enough without more to object to. I agree. I agree with that, and that's why we're proceeding on plain air review. I believe that the trial lawyers should have objected at that time and reigned that in. In fact, I believe this court has talked about trial courts reigning in this type of testimony by agents. I believe that Agent Clough crossed the line when he identified my client as a drug courier, because that is not testifying as to a business model and allowing the jury to determine what my client might have been in that business model, but he testifies we determined that he is a courier for the drug trafficking organization. It wasn't based upon just his personal opinion. The defense lawyers did what they could, damage control, but he again said, no, we believe, meaning the agency. And what that did for this trial is that framed the rest of the evidence. I mean, the jury is going to see my client as a drug courier and all the rest of the people lining up with Richard Clough's identification of everybody in this organization. In dealing with the government's Rule 28J letter, there the agent made no assertion or generalization regarding the defendant's intent, and I think it goes back to the business model. This court has allowed agents to talk about the drug trafficking organization's business model, but here it went even deeper, where you have agent Clough identifying people in doing things for the drug, a particular drug trafficking organization. So how do you get out of that? Said, well, he has identified this person as a cell head. Well, that person, he's talking about that person's requisite mental state. And then he goes to my client and says, he's a drug courier. There's, that speaks volumes, and it speaks volumes to a jury who's deciding whether or not a person is in or a person is out. When it comes to guilt by association, the government contends here that it did not contend at trial that Mr. Ortiz was guilty because of the people he associated with. But just in closing, the government argued, what inference can you draw from his associating with all these individuals? And what the government emphasized repeatedly in the case are third-party arrests. The rest of certain couriers, certain people involved in this organization said, this person was arrested, this person was arrested, this person was arrested, which none of that is admissible to show guilt. But then turns over to Ortiz Salazar and says, he's associating with all these people. That is guilt by association evidence, and it's damaging, and it's highly prejudicial. We're not arguing that there was no evidence presented against Ortiz Salazar about his involvement in a drug organization, but the guilt by association evidence was so we asked for a new trial. All right. Thank you, Mr. Smythe. Your case is under submission. Let me just ask both sides to cooperate as officers in court and provide to Ms. Trice here, our courtroom deputy, at least one copy of those charts. You can agree to make sure they're accurate, but provide that to her. She can make additional copies for the judges, or if you have copies, that would be fine, too. Just ask that you would visit with her about that and provide those. All right. We still have those here. All right. Is that acceptable? I mean, would those be acceptable to satisfy what Judge Smith mentioned? I don't think I can tell you exactly what they were doing. I believe that the digital results were supposed to send all of the evidence out on a disk or something, because there were several of those that couldn't be uploaded to the public records system, so they were going to send them out by disk. I think that's fair, right? All right. Well, let's just make sure while all counsel is here, while we're hearing the next case, that all of you confer and figure out that this is done appropriately and that everyone's in the courtroom and the judges will have those. All right. Well, what we're interested in right now are hard copies of these particular charts that were shown. They're very small. That would be helpful if everyone's in agreement, unless there's objection made to that. All right. Thank you. And we also wish to acknowledge Ms. Schmucker and Mr. Smyth that you are court appointed, and we appreciate your willingness to take the appointments and appreciate your good work on behalf of your clients. Your case is under submission.